UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA

CASE NO.  4:21-cv-00480-MW-MAF

KAREN LUCKADO,

     Plaintiff,

v.

EL SHADDAI MOTEL GROUP, LLC, a Florida
limited liability company; HERON HOUSE
APARTMENTS OF STEINHATCHEE, LLC, a
Florida limited liability company; PRETORIUS
FAMILY, LLC, a Florida limited liability
Company; SUSANNA CREAMER a/k/a SUSAN
PRICE, an individual; FLOYD E. CREAMER,
an individual, and MARCELO CUNHA, an
individual,

     Defendants.

_____/

**PLAINTIFF'S SECOND MOTION TO COMPEL DISCOVERY[1]**

     The Plaintiff, by and through undersigned counsel and pursuant to Rules

26, 33, 34 and 37 Fed.R.Civ.P., files this Motion to Compel Discovery, and

states as follows:

---

[1] The Plaintiff previously filed Motions to Compel discovery (ECF #'s 14, 15 and 16).  Only after those Motions were filed, did the Defendants serve amended discovery responses.  In the Defendants' Response in Opposition (ECF 18) Defendants argued their supplemental responses resolved many of the discovery issues raised.  The Plaintiff disagrees.  The Court's discovery Order (ECF 20) stated that Plaintiff could file a second motion to compel to address outstanding deficiencies.  *See* Order (ECF 20) at pp. 4, 6, 11, 13 and 18.

## I.   BACKGROUND

The Plaintiff's case arises under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201 et seq. for unpaid minimum and overtime wages. *See* Complaint (ECF No. 1). The Plaintiff has also brought a claim for minimum wages under the Florida Constitution's Minimum Wage Amendment ("FMWA"), Art. X §24 Fla. Const. *Id.*

From about 2017 to about October 15, 2021, the Plaintiff was employed by the Defendants at their various inns/rental properties.   Complaint at ¶12. Despite usually working seven days per week, the Defendants paid the Plaintiff $100.00 per week.  Id. at ¶¶24-25.  The Defendants permitted the Plaintiff to live on their premises free of charge.

On January 19, 2022, the Plaintiff served Defendants with Interrogatories and Requests for Production, as set forth, *infra.*  The Defendants served their responses, thereto, on February 25, 2022.

Because the responses were deficient and the Defendants would not amend, on March 29, 2022 the Plaintiff filed Motions to Compel (ECF 14, 15 and 16 ).  Only after those Motions were filed did the Defendant serve amended (but still deficient) discovery responses.   The Defendants attached those amended discovery responses to their Response in Opposition as ECF #'s 18-1

2

through 18-9.   As those amended responses are still deficient, the Plaintiff has filed this Second Motion to Compel.

As the Court may recall from Plaintiff's original Motions to Compel (ECF #'s 14, 15 and 16), many of her Interrogatories and Requests for Production were nearly identical—so, too, were many of the Defendants' responses.  Thus, for the Court's convenience, the Plaintiff will group similar issues, together.  The discovery at issue, discussed *infra,* is attached as follows:

1.   Interrogatories to Marcelo Cunha (attached as **Exhibit 1**);

2.   Amended Answers to Interrogatories by Marcelo Cunha (attached as **Exhibit 2**);

3.   Interrogatories to Susan Creamer (attached as **Exhibit 3**);

4.   Amended Answers to Interrogatories by Susan Creamer (attached as **Exhibit 4**);

5.   Interrogatories to El Shaddei Motel Group, LLC ("El Shaddei")(attached as **Exhibit 5**);

6.   El Shaddei Amended Answers to Interrogatories  (attached as **Exhibit 6**);

7.   Interrogatories to Pretorius Family, LLC ("Pretorius")(attached as **Exhibit 7**);

8.  Amended Answers to Interrogatories by Pretorius (attached as **Exhibit 8**);

9.  Request for Production ("RFP") to Heron House (attached as **Exhibit 9**);

10. Heron House Response to RFP (attached as **Exhibit 10**).

11. Interrogatories to Heron House Apartments of Steinhatchee, Inc. ("Heron House") (attached as **Exhibit 11**);

12. Heron House Amended Interrogatory Answers (attached as **Exhibit 12**);


I.   <u>**MEMORANDUM OF LAW**</u>

Rule 37 Fed.R.Civ.P. provides that if a party fails to respond to discovery requests, the discovering party may move for an order compelling an answer or response.  A movant may seek the expenses associated with filing the motion to compel pursuant to Rule 37(a)(5).


II.  <u>**INTERROGATORIES TO MARCELO CUNHA**</u>

<u>Interrogatory No. 2:</u>

**Please state whether Plaintiff performed any work or services for any company or business entity which you owned, managed, operated, oversaw, were a shareholder, member, or had an equitable, legal or financial interest. If so, identify each such entity, the Plaintiffs dates of work, her work hours, and the amounts she was paid.**

**<u>Cunha Amended Answer:</u>**

4

> **My understanding is that Plaintiff worked at Heron House. I have no knowledge of worked performed or payments made to Plaintiff for El Shaddai Motel Group. I have never seen her here or communicated with her about work here. I have never seen or heard Susan Creamer giving her orders or paying her for working here. I have never seen her doing any work here. I have no knowledge about her work or pay for the Heron House.**

**Argument:** Marcelo Cunha's amended response is vague and ambiguous insofar as his "understanding" about the identified matters. Use of the phrase "my understanding" is particularly ambiguous considering Cunha's vaguely worded "sworn" Verification which states:

> I, Marcelo Cunha, declare under the penalty of perjury that I have read the foregoing Defendant Marcelo Cunha's Amended Responses and Objections to Plaintiffs First Set Of Interrogatories and they are true and correct to the best of my knowledge, information, and belief.

*See* Cunha Amended Interrogatory Response at 6. Cunha's use of the words "to the best of my knowledge, information and belief" compounded with his answer about his "understanding" of things, creates uncertainty about whether he is binding himself to *anything*.

Interrogatory # 2 to Cunha is a "yes" or "no" question. Cunha's answer is ambiguous because it fails to state whether the Plaintiff performed work for *other* Defendants *besides* Heron House. Moreover, to the extent that Marcelo

Cunha has identified "Heron House" as a place where the Plaintiff worked, he fails to state her "dates of work, her work hours, and the amounts she was paid," the extent he has knowledge.

Cunha's answer to the interrogatory goes off on multiple tangents that do not answer the question. The answer is vague on what he means by the word "here," when he says, "I have never seen her here or communicated with her about work here." He should be compelled to answer the question being asked.

**Interrogatory No. 4 to Cunha:**

**From 2017 to the present, please state whether Plaintiff was given cash, directly or indirectly, from you or any other of the Defendants. Is so, please identify whom; the date of each and every cash payment, the amount of every cash payment, the number of hours of work each cash payment was designed to cover, the business or financial institution from which each and every cash payment was obtained so payment could be made, the persons involved in delivering or in any way processing or handling each cash payment, whether the wages paid to Plaintiff were either identified or made part of your tax filings, and identify the creation date of each document reflecting cash payments made. Please identify all documents relied upon in responding.**

**Cunha Amended Answer:**

**I made no payments to Plaintiff, ever. I have no knowledge of any payments and I have no knowledge of documents or tax filings or communications about any payments.**

**Argument:**  The response is vague and ambiguous as phrased.  It's a "yes' or "no" question.  While Cunha makes clear that he personally, made "no payments" to the Plaintiff, his answer about whether Susan Creamer (*his wife*) or the other Defendants ever paid cash to the Plaintiff, is ambiguous at best.  Tellingly, Cunha never succinctly states he lacks knowledge whether the other Defendants, including his spouse, paid the Plaintiff in cash.

Indeed, the question is concerned with payments in *cash,* only.  Thus, Cunha saying "I have no knowledge of any payments" is ambiguous.  If he is truly lacks knowledge whether Plaintiff received *cash* from *any* of the numerous Defendants, Cunha should just come out and say *that*.  However, if Cunha answers Interrogatory # 4 in the affirmative, he should be compelled to answer the subparts that follow.  Lastly, Cunha's answer that he has "no knowledge of documents or tax filings or communications about any payments," *does not* answer the question, but rather, goes off on a tangent.  Cunha should be compelled to respond.

## III.  INTERROGATORIES TO SUSAN CREAMER

### Interrogatory No. 4 to Susan Creamer:

**From 2017 to the present, please state whether Plaintiff was given cash,**

directly or indirectly, from you or any other of the Defendants. Is so, please identify whom; the date of each and every cash payment, the amount of every cash payment, the number of hours of work each cash payment was designed to cover, the business or financial institution from which each and every cash payment was obtained so payment could be made, the persons involved in delivering or in any way processing or handling each cash payment, whether the wages paid to Plaintiff were either identified or made part of your tax filings, and identify the creation date of each document reflecting cash payments made. Please identify all documents relied upon in responding.

**Amended Response to Interrogatory # 4 by Susan Creamer**:

**Defendant objects to this request on the grounds that it seeks irrelevant information and is not proportional to the needs of the case. See Defendant's response to Interrogatory No. 2. Payments were made via cash or CashApp.**

**Argument**: Susan Creamer's objection is *untimely*. She did not raise this objection in her original response (ECF 14-2), and therefore the objection should be overruled. The objection should also be overruled as boilerplate. Next, the objection is meritless—nothing could be more proportional in an FLSA case than a question asking if a plaintiff was paid cash, and if so, how much. Indeed, Susan Creamer's answer acknowledges that the Plaintiff *was* paid in cash. Thus, she must be compelled to answer the question's subparts.

8

Although Susan Creamer attempts to reincorporate her prior answer to Interrogatory # 2, that is completely unhelpful.[2]  To be sure, her response to Interrogatory # 2 *does not* answer the subparts found in Interrogatory # 4, especially "the amount of every cash payment, the number of hours of work each cash payment was designed to cover, the business or financial institution from which each and every cash payment was obtained so payment could be made, the persons involved in delivering or in any way processing or handling each cash payment, whether the wages paid to Plaintiff were either identified or made part of your tax filings, and identify the creation date of each document reflecting

---

[2] Interrogatory # 2 to Susan Creamer asked:

> Please state whether Plaintiff performed any work or services for any company or business entity which you owned, managed, operated, oversaw, were a shareholder, member, or had an equitable, legal or financial interest. If so, identify each such entity, the Plaintiff's dates of work, her work hours, and the amounts she was paid.

Creamer's Amended Answer to Interrogatory # 2 (*see* Exhibit 3) stated:

> Plaintiff worked at Heron House Apartments of Steinhatchee, LLC. Her main duties were to clean apartments after guests vacated. She also would sweep up and take out trash and perform limited yard maintenance.  Plaintiff did not have set hours, except that she was only able to clean apartments between 11:00 a.m. and 3:00 p.m. She was not required to be on the property during particular hours except when she had rooms to clean. She worked, at most, 25 hours per week. She was paid the equivalent of at least $350/week in furnished housing that included free WiFi, cable, utilities, a kitchen, living room, bedroom, and two full bathrooms, $100 per week in cash, plus $25 for each time she cleaned the River House. On a handful of occasions I asked her to perform a task at another property; on such occasions I paid her separately for those tasks.

9

cash payments made."  Moreover, she fails to "identify all documents relied upon in responding," as specifically requested in Interrogatory # 4.  She should be compelled to fully and completely answer Interrogatory # 2 *without* objections.

## IV.  INTERROGATORY # 2 TO *BOTH* EL SHADDEI AND PRETORIUS

**For the period of February 1, 2018 to October 2021, provide the identity of each person (employees, workers or anyone you deem as independent contractors) who worked on the premises, offices or property of [ESMG or Pretorius]. As for each calendar day in that period, identify the specific person working on each shift, the hours comprising each shift, the hours worked that day, the duties performed by each worker on each calendar day, and the total hours worked in the week by each worker.**

**El Shaddei's Amended Response to Interrogatory # 2:**

**Defendant objects to this request as Plaintiff never worked for Defendant; therefore, any information provided to this request is irrelevant and not proportional to the needs of the case. Defendant further objects to this request on the grounds that it is overly broad and unduly burdensome. Notwithstanding the foregoing objections and without waiving them, the following individuals worked on the premises of the El Dorado Motel between February 1, 2018 and October 2021: Dawn Daigle, Debra Liles, David Blunt, Nicole Belcher, Kirby Davis, Windy Davis, Marjorie Calvert.**

**Argument**:  The Amended response by El Shaddei does not answer the question being asked.  The question does *not* necessarily relate to the Plaintiff, but instead, the *other* workers who purportedly worked at the subject motel. Because motels do not run themselves, if the Defendants wants to dispute that

Plaintiff was working substantial hours, then someone *else* must have been working those shifts.   The objection should be overruled as boilerplate and a waste of time.  It is completely reasonable for the Plaintiff to use the tools of discovery to obtain witness information, especially about the people she *actually* worked with.  Moreover, the number of individuals is small, making the "unduly burdensome" objection, meritless.  Although the Defendant identifies workers, it fails to answer the subparts which asked "[a]s for each calendar day in that period, identify the specific person working on each shift, the hours comprising each shift, the hours worked that day, the duties performed by each worker on each calendar day, and the total hours worked in the week by each worker."

**<u>Pretorius' Amended Answer to Interrogatory # 2</u>:**

**Defendant objects to this request as Plaintiff never worked for Defendant; therefore, any information provided to this request is irrelevant and not proportional to the needs of the case. Defendant further objects to this request on the grounds that it is overly broad and unduly burdensome. Notwithstanding the foregoing objections and without waiving them, the following individuals worked on the premises of the Suwanee River Motel between February 1, 2018 and October 2021: Charlotte Sparks, Joey Henderson, Susan Creamer, Joseph Bokulich, Nicole Belcher, Kirby Davis.**

**Argument:**  Because Pretorius' answer is virtually identical to that of El Shaddei, the Plaintiff reincorporates the same arguments, *supra*.  Pretorius should be compelled to respond for the same reasons.

11

## V.    REQUEST FOR PRODUCTION ("RFP") TO HERON HOUSE

In its Discovery Order (ECF 20), the Court noted that in response to Plaintiff's original Motions to Compel (ECF 16), Heron House claimed that "[r]esponsive documents have been produced, and none are being withheld" with respect to RFP #'s 1, 11, 17, 18, 19, 21, 25–30, and 42.  *See* Order (ECF 20) at pp. 4, 6, 11, 13 and 18.

As an initial matter, neither Heron House, nor the other Defendants have turned over *any* time or payroll records reflecting the Plaintiff's work for her 3+ years of employment.  Of course, the Defendants cannot produce what they do not have.   Nevertheless, Heron House's RFP responses, as drafted, say the *opposite* of what it told the Court.   RFP #'s 1, 11, 17, 18, 19, 21, 25–30, and 42 to Heron House are still at issue and are addressed as follows:

1.      **All journals, transcripts, diaries, transaction reports, pay stubs, pay checks, wage papers, punch-clock records, documents, papers, job applications, invoices, emails, memoranda, notes, phone message slips, or any other written or electronically stored material referencing the Plaintiff, her work schedules, work hours, wages, cash payments to him, salary, rate and method of pay, hours worked, services performed, arrival/departure from work, breaks taken, or any matters concerning her.**

> **RESPONSE: Most of the requested documents do not exist. Defendant will  produce all responsive documents within its possession, custody, or control.**

12

**Argument**:

Even though, the Court noted in its Discovery Order (DE 20) that Heron House was now claiming "[r]esponsive documents have been produced, and none are being withheld," *see* <u>Order</u> (ECF 20) at 16, that is *not* what is reflected in Heron House's actual discovery responses to RFP #1, *supra*.

As phrased, the Plaintiff has no idea what "most" even means in Heron House's Response to RFP #1.   Moreover, the "Response" seems to indicate documents "will be produced," yet the Plaintiff does not know if the *sparse* records produced by the Defendants (a mere 43 pages for Plaintiff's 3+ years of employment—with no time or weekly payroll records) is all there is.

The Defendant should be compelled to clearly state what records it *does have* that are responsive to RFP # 1, and separately, the documents it claims *not* to have.  Otherwise, Heron House is speaking out of both sides of its proverbial mouth and is bound by nothing—leaving the door open for it produce documents in the future at its leisure.   It is unacceptable for the Defendant to say it "will produce" documents, when the deadline for doing so, past.   *See* Fed.R.Civ.P. 34.  Considering this is an FLSA case where the Defendants have an obligation to keep time/pay records in compliance with 29 U.S.C. §211, the

Plaintiff should not have to guess whether Defendants complied with FLSA's

recordkeeping requirements—after receiving discovery responses on that issue.

**11. Any document related to your Initial Disclosures, as well as any document on which you will rely insofar as your defenses to this litigation.**

> **RESPONSE: Defendant has not yet submitted its Initial Disclosures, and has not yet determined which documents it will rely upon in defense of this litigation.**

> > **Argument:** This Response does not jibe with Heron
> >
> > House's claim that "[r]esponsive documents have been produced,
> >
> > and none are being withheld," *see* Order (ECF 20) at 16.   As the
> >
> > time to provide documents pursuant to Rule 26  has already past,
> >
> > Heron House should be compelled to amend its response.
> >
> > Otherwise, Heron House is bound by nothing, and allows it to
> >
> > leave the door open for it to produce documents in the future, at its
> >
> > leisure.

**17. Any and all documents identified in Defendant's Answers to Interrogatories or which were referred to in responding thereto.**

> **RESPONSE: See documents Defendant will produce in response to request no. 1.**

14

**Argument**: The Plaintiff reincorporates her argument from RFP #1.

18. **The complete personnel file of Plaintiff, or any documents which are in yourpossession, custody or control which reference the Plaintiff.**

**RESPONSE**: **See documents Defendant will produce in response to request no.1.**

**Argument**:   The Plaintiff reincorporates her argument from RFP #1.

19. **Any and all timecards, sign-in sheets or other documents which reflect the hoursand shifts worked by Plaintiff.**

**RESPONSE**: **See documents Defendant will produce in response to request no. 1.**

**Argument**:   The Plaintiff reincorporates her argument from RFP #1.

21. **Any and all timecards, sign-in sheets and other documents which reflect any preshift work or time, post-shift work or time, or overtime hours, or worked by Plaintiff from home or away from her usual location of work, in each workweek.**

**RESPONSE**: **See documents Defendant will produce in response to request no. 1.**

**Argument**: The Plaintiff reincorporates her argument from RFP #1.

25. **All documents you contend support any argument that Plaintiff or Defendantsare exempt from the FLSA.**

**RESPONSE**: **Defendant will produce the requested documents.**

**Argument:** As the deadline to respond has past, the Plaintiff reincorporates her argument from RFP #1.

**26. Any and all documents which Defendant claims will substantiate or otherwise support any asserted exemption from overtime or minimum wages being due.**

**RESPONSE: Defendant will produce the requested documents.**

**Argument:** As the deadline to respond has already past, the Plaintiff reincorporates her argument from RFP #1.

**27. Any documents used to calculate the reasonable cost of any food, facilities or other fringe benefits provided to Plaintiff.**

**RESPONSE: Defendant will produce the requested documents.**

**Argument:** As the deadline to respond has past, the Plaintiff reincorporates her argument from RFP #1.

**28. Any documents used to calculate the fair value of any food, facilities or other fringe benefits provided to Plaintiff.**

**RESPONSE: Defendant will produce the requested documents.**

**Argument:** As the deadline to respond has past, the Plaintiff reincorporates her argument from RFP #1.

**29. Any documents referencing or relating to your company determining the reasonable cost of food, lodging or other benefits provided to the Plaintiff.**

**RESPONSE: Defendant will produce the requested documents.**

**Argument:** As the deadline to respond has past, the Plaintiff reincorporates her argument from RFP #1.

**30. Any documents referencing or relating to your company determining the fairvalue cost of food, lodging or other benefits provided to the Plaintiff.**

**RESPONSE: Defendant will produce the requested documents.**

**Argument:** As the deadline to respond has past, the Plaintiff reincorporates her argument from RFP #1.

**42. Copies of any documents which would support any Affirmative Defense made, or to be made, by any of the Defendants, or the reasons related to the cessation of the Plaintiff's work with your company.**

**RESPONSE: Defendant will produce the requested documents.**

**Argument:** As the deadline to respond has past, the Plaintiff reincorporates her argument from RFP #1.

## IV.   INTERROGATORY # 2 TO HERON HOUSE

**For the period of February 1, 2018 to October 2021, provide the identity of each person (employees, workers or anyone you deem as independent**

**contractors) who worked on the premises, offices or property of HHAS. As for each calendar day in that period, identify the specific person working on each shift, the hours comprising each shift, the hours worked that day, the duties performed by each worker on each calendar day, and the total hours worked in the week by each worker.**

**<u>AMENDED RESPONSE BY HERON HOUSE</u>:**

**Defendant objects to this request on the grounds that it is overly broad and unduly burdensome. Additionally, Defendant does not have all the information requested. Notwithstanding the foregoing objections and without waiving them, the following individuals regularly worked on the premises of Heron House Apartments and River House during some portion of time between February 1, 2018 and October 2021: Susanna Creamer, Plaintiff, Roxanne Carman, Maria Santosh, Marcela Russell, Shelly Stroupe, Nicole Belcher, Kirby Davis, Windy Davis.**

<u>Argument</u>:

As an initial matter, the objection is meritless and should be overruled.  Motels do not run themselves; if the Defendant wants to claim that the Plaintiff was not working the substantial hours she claims, then someone *else* must have been working those shifts.   It is completely reasonable for the Plaintiff to use the tools of discovery to obtain witness information, especially about the people she *actually* worked with. Moreover, the number of individuals is small, making the "unduly burdensome" objection, meritless. Also, Heron House's statement that it "does not have all the information requested," is ambiguous---it is not

clear what this even means.

Although Heron House identifies workers, it fails to answer the subparts which asked "[a]s for each calendar day in that period, identify the specific person working on each shift, the hours comprising each shift, the hours worked that day, the duties performed by each worker on each calendar day, and the total hours worked in the week by each worker." Heron House's amended response is not much of an improvement from its original, vague, response. *Compare* ECF 16-3. It should be compelled to supplement. If Heron House does not know the answer to a subpart, it should just come out and say *that*, rather than beating around the bush.

## VI.   ATTORNEY'S FEES

The Plaintiff is seeking fees under Rule 37 Fed.R.Civ.P. The Plaintiff served reasonable discovery on the Defendants—nothing unusual in an FLSA case—however, the Defendants have provided vague answers/responses, and have utterly failed to answer numerous subparts. The Defendants' objections are meritless on their face. The Plaintiff spent 2.4 hours drafting the Motion and seeks **$1,040.00** in attorneys' fees (2.6 hours x $400 lodestar rate = $1,040).

WHEREFORE, the Plaintiff seeks an Order (a) compelling Defendant **Marcelo Cunha** to supplement and provide full and complete responses

(without objections) to **Interrogatory #'s 2 and 4,** (b) compelling **Susan Creamer** to supplement and provide full and complete responses (without objections) to **Interrogatory # 1** (c) compelling **El Shaddei, Pretorius** *and* **Heron House**, *respectively*, to supplement and provide full and complete responses (without objections) to **Interrogatory # 2**, (d), compelling Defendant **Heron House** to supplement responses to **RFP #'s 1, 11, 17, 18, 19, 21, 25–30, and 42** to clearly state the records it actually has, and those it does not, (e) award Plaintiff $1,040.00 in attorneys' fees and costs and requiring the Defendants to pay Plaintiff's counsel, promptly, (c) and grant all other relief deemed appropriate.

Respectfully submitted,

BOBER & BOBER, P.A.
Attorney for Plaintiff
2699 Stirling Road, Suite-A304
Hollywood, FL 33312
(954) 922-2298 (phone)
(954) 922-5455 (fax)
peter@boberlaw.com

By: s/. *Peter Bober, Esq.*
FBN:  0122955

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served via email on April 29, 2022 on all counsel or parties of record on the attached service list.

*/s/. Peter J. Bober*

## CERTIFICATE OF GOOD FAITH CONFERRAL

As set forth in the Plaintiff's original Motions to Compel (ECF #'s 14, 15, and 16) the Plaintiff contacted the defense counsel by telephone and email regarding the deficiencies, herein.  In addition, the Plaintiff sent the Defendant a detailed list of the discovery deficiencies so there would be no ambiguity. Despite attempting to work with the Defendant to resolve the dispute, the Plaintiff was unable to do so.  The Defendants' discovery responses lack substance and fail to answer numerous subparts, and the same discovery deficiencies identified in ECF #'s 14, 15 and 16, still remain.

*/s/. Peter J. Bober*

## SERVICE LIST

Ashwin R. Trehan
Spire Law, LLC
2572 W. State Road 426, Suite 2088

Oviedo, FL 32765
ashwin@spirelawfirm.com
(407) 494-0135 tel.
*Counsel for Defendants*